William L. **BRINKLEY**, Plaintiff-Appellant,

v.

**FARMERS ELEVATOR MUTUAL INSURANCE COMPANY**, a corporation, Defendant-Appellee.

Helen L. **BRINKLEY**, Plaintiff-Appellant,

v.

**FARMERS ELEVATOR MUTUAL INSURANCE COMPANY**, a corporation, Defendant-Appellee.

No. 73–1257.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 11, 1973.

Decided Oct. 16, 1973.

Frank C. McMaster, Wichita, Kan. (Stanford J. Smith and D. Lee McMaster, Wichita, Kan., on the brief), for plaintiffs-appellants.

Richard T. Foster, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan. (William A. Hensley, Wichita, Kan., Turner, Chartered, Great Bend, Kan., on the brief), for defendant-appellee.

Before PHILLIPS, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue here to be resolved is whether under the doctrine of respondeat superior a client is liable for the tortious conduct of his attorney which causes injury to a third party. The trial court held that there was no such liability, and this appeal follows.

William and Helen Brinkley, the plaintiffs in the present proceeding, sustained severe injuries when the vehicle in which they were riding collided with a vehicle owned and operated by Clarence N. Holeman. For the purposes of this proceeding, at least, it is conceded that the collision was solely the result of Holeman's negligence, he apparently being in an intoxicated condition at the time. The accident occurred at approximately 7:45 P.M. in Pratt County, Kansas, on U.S. Highway 54.

Holeman was a practicing attorney with law offices in Wichita, Kansas. Holeman had been employed by Farmers Elevator Mutual Insurance Company, hereinafter referred to as Farmers, to represent one of its insureds in an action which had been brought against the insured in the County Court in Dodge City, Kansas. On the day of the accident, Holeman had represented Farmers' insured in the County Court in Dodge City, Kansas, the trial of the case having been concluded at approximately 11:45 A.M. on October 11, 1967. This was the only matter which Holeman handled for Farmers on the day in question, and how and where he spent the balance of that particular day is not known, at least from the record before

us. Apparently Holeman sometime during the afternoon did imbibe alcoholic beverages. In any event, as he was returning that evening from Dodge City to his home in Wichita he negligently caused his vehicle to strike the vehicle in which the Brinkleys were riding. As indicated, the Brinkleys were severely injured, and Holeman himself was killed.

It was in this general setting that the Brinkleys brought separate diversity actions against Farmers, alleging that Holeman was an agent, servant and employee of Farmers and that accordingly Farmers, under the doctrine of respondeat superior, was liable to the Brinkleys for their damages, which were said to total some $350,000, as actual damages, plus an additional $100,000, as punitive damages. By answer, Farmers specifically denied that Holeman was its agent, servant or employee, and generally denied any vicarious liability on its part.

The parties to the litigation filed with the trial court a very elaborate joint stipulation of fact, which fully explored, and set forth in detail, the nature of the relationship between Holeman and Farmers. Based, then, on the underlying facts contained in the joint stipulation, Farmers moved for summary judgment. After argument, this motion was granted and summary judgment was entered in favor of Farmers. The Brinkleys now appeal. We affirm. In order for this opinion to have any real meaning, we feel the stipulation of facts should be summarized in considerable detail. The nature of the relationship between Holeman and Farmers is of course all important.

As indicated, Holeman was an attorney at law licensed to practice in Kansas, and he maintained his own law office in Wichita. In connection therewith Holeman employed a legal secretary and he had recently employed a young attorney to assist in the operation of his law office. Holeman had maintained his own law office since about 1955, when he had left a firm of lawyers with whom he had previously been associated for several years. Holeman held himself out to the public as engaging in the general practice of law, and he was so considered by other members of the Bar in the Wichita area.

Farmers is an insurance company incorporated in Iowa and maintaining its principal offices in Des Moines, Iowa. It has an office in Hutchinson, Kansas, which is headed by a claims adjuster who is a full-time employee of Farmers.

In the conduct of its business, Farmers always attempted to negotiate and settle any claim against one of its insureds through its claims adjuster. If a claim could not be settled, and a lawsuit was instituted against one of its insureds, then Farmers at that point would employ counsel to defend the suit. Prior to 1955, Farmers had frequently employed the firm with which Holeman was then associated to represent its insureds. After Holeman terminated his association with the firm in 1955, Farmers began employing Holeman to represent its insureds against whom suit had been filed. This relationship grew to the end that in the ensuing years Holeman was traveling all over Kansas in his representation of Farmers' insureds and at one time the monies received by Holeman from Farmers represented nearly 90% of his total income from his practice of the law.

In traveling around the state of Kansas, Holeman generally used his own vehicle, although he sometimes traveled with others or used commercial airlines. There was no contract between Farmers and Holeman, and the latter was hired on a case-by-case basis, with his fees for services being rendered on an hourly basis at a standard charge. He was also reimbursed by Farmers for out of pocket expenses, including travel expense at 8¢ per mile.

The manner in which a particular case would be tried was in Holeman's hands, with Farmers reserving only the right to decide whether a given case should be settled or tried. Accordingly, though an adjuster sometimes sat in on a trial, Holeman was in command of the trial it-

self, as well as the pretrial investigation and preparation.

It was in this general factual setting that Farmers employed Holeman to represent one of its insureds who was being sued in Dodge City, Kansas, which is located some 150 miles west of Wichita. Pursuant to his employment, Holeman drove in his own automobile to Dodge City where, during the morning of October 11, 1967, he tried a case for Farmers' insured. This trial concluded before noon on the 11th. What Holeman did on the afternoon of the 11th is not known, although it is agreed that he performed no other services for Farmers during that time. En route back to Wichita, Holeman in the early evening of the 11th was involved in the accident out of which the present controversy arose.

In granting Farmers' Motion for Summary Judgment, the trial court observed that under applicable Kansas law though a principal is liable for the tort of his agent, he is only liable if the tort be committed at a time when the agent is acting within the scope of his authority or employment. In this latter regard, the trial court concluded that when the tort occurred Holeman was not "engaged in or furthering the business" of Farmers. It was on this basis that summary judgment was entered for Farmers. We generally agree.

The exact nature of the relationship between an attorney and his client has through the years been the subject of considerable judicial discussion. In some older cases, the relationship has been characterized as that of a master and servant, with the client being the master and the attorney the servant. Richmond Association of Credit Men, Inc. v. Bar Ass'n of City of Richmond, 167 Va. 327, 189 S.E. 153 (1937); In re Clifton, 115 Fla. 168, 155 So. 324 (1934), and Chatham Lumber Co. v. Parsons Lumber Co., 172 N.C. 320, 90 S.E. 241 (1916). At the other end of the spectrum, courts have held that an attorney's relationship to his client is more akin to that of an independent contractor. Pyle v. Ely & Walker Dry Goods Co., 179 F.2d 677 (5th Cir. 1950), and Buehman v. Smelker, 50 Ariz. 18, 68 P.2d 946 (1937). Still other courts have described the relationship as being that of principal and agent.

▮ Under Kansas law, the relation between an attorney and his client has been held to be one of agency to which the general rules of agency apply. Pearcy v. First Nat. Bank in Wichita, 167 Kan. 696, 208 P.2d 217 (1949). See, also, Chisler v. Randall, 124 Kan. 278, 259 P. 687 (1927), where it was held that an attorney employed to conduct litigation is an agent for his client, but only as to matters respecting the litigation, and not for unauthorized defamatory communications made by the attorney outside the scope of his employment. So, as our starting point, we accept, as we must, the premise that under Kansas law there was a principal and agent relationship between Farmers and Holeman wherein Holeman was Farmers' agent in matters respecting the litigation involving Farmers' insured then pending in the County Court in Dodge City, Kansas.

▮ However, even though the relationship between Holeman and Farmers be one of agency, it does not necessarily follow that under the doctrine of respondeat superior Farmers is vicariously liable for Holeman's tortious conduct toward the Brinkleys. Under Kansas law, the liability of a principal for the negligent acts of his agent is controlled by a determination as to whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the "right to direct and control" the agent's activities. See Hughes v. Jones, 206 Kan. 82, 476 P.2d 588 (1970), and Jacobson v. Parrill, 186 Kan. 467, 351 P. 2d 194 (1960). See, also, Karnowski v. Skelly Oil Co., 174 F.2d 770 (10th Cir. 1949). If the principal had no such right to direct and control, then he is not vicariously liable to third parties for the consequences of the agent's tortious conduct.

To the same general effect, *see* Hurla v. Capper Publications, 149 Kan. 369, 87 P.2d 552 (1939), where it was declared that it is not every principal who is liable for the tortious conduct of an agent, and that before a principal may be held liable for the tortious conduct of his agent "it is necessary to establish that particular species of agency known in the law as master and servant." Hence, cases involving efforts to hold a master, or employer, liable to third parties for the tortious acts of his servant, or employee, become pertinent. Two such cases are United States v. Hainline, 315 F. 2d 153 (10th Cir. 1963), cert. denied, 375 U.S. 895, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), and Kyle v. Postal Telegraph-Cable Co., 118 Kan. 300, 235 P. 116 (1925).

Though the factual setting in *Hainline* is dissimilar to that of the instant case, the following language from that case is deemed pertinent:

" * * * Under Kansas law the liability of an employer for the negligent acts of his employee is controlled by a determination as to whether, at the time of the act complained of, the employee was engaged in the furtherance of the employer's business to such a degree that the employer had the right to direct and control the employee's activities. Liability does not attach to the employer if there is only incidental furtherance of the employer's business. * * * "

In *Kyle,* an attempt was made to hold a telegraph company liable for the tort of its messenger boy who ran into a third party with his bicycle while returning home after the completion of his day's work. In holding that vicarious liability did not attach to the master, the Kansas Supreme Court observed as follows:

"The question presented is whether, under the circumstances, the messenger boy, at the time of the accident, was acting within the scope of his employment. While he had upon his person reports and copies of messages which he was taking to his home that evening for delivery to the main office upon the succeeding Monday morning, no directions were given him as to the route he must follow to his home, when he should arrive there, whether he should go there, or where he should deposit the reports and documents given to him. Except that he was to deliver the reports the following Monday according to his custom, he was no longer under the company's control, and that control did not again commence until he reported for duty the following Monday morning at 8 o'clock at the main office.

"In order to charge the employer with the negligent acts of his employee, the relation of master and servant must necessarily exist at the time of the injury. While Vandewalker had in his custody the reports for the company to be later delivered, actual work for the company had ceased for the day. He was free to go where he desired. He could use his own mode and route of travel. The defendant no longer controlled his movements. He might choose any route he desired to go home, or he might not go home at all. * * * "

Under the authorities above cited and based on the stipulated facts, we agree with the trial court that at the time he drove his automobile into the Brinkley vehicle, Holeman was not engaged in the furtherance of Farmers' business to such a degree that it could be said that Farmers, as the principal, had the right to direct and control Holeman's physical conduct. Accordingly, Farmers is not vicariously liable for the consequences of Holeman's misconduct. If Farmers had no right to direct or control Holeman's courtroom activities in Dodge City, Kansas, on the morning of October 11, 1967, which right it is agreed Farmers did not have even though Holeman in one sense was its agent, even less did it have a right to direct or control his homeward jaunt during the evening of that same day. Even as the messenger boy in *Kyle,* Holeman was free to go where he

desired and could use his own mode and route of travel and he might well have chosen not to go home at all. In sum, Farmers had no right to direct or control Holeman's physical activities at the time he collided with the Brinkley vehicle.

Judgment affirmed.